IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| SEAN BOBAK and MARY BOBAK, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 150371D |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered April 26, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated April 14, 2015, for the 2011 tax year. A trial was held in the Oregon Tax Courtroom on December 14, 2015, in Salem, Oregon. Sean Bobak (Bobak) appeared and testified on behalf of Plaintiffs. Ira Mitchell appeared and testified on behalf of Defendant. No exhibits were received from Plaintiffs. Defendant's Exhibits A through G were received without objection.

I. STATEMENT OF FACTS

Bobak testified that in March 2011, he accepted a new job and moved from Oregon to Washington, D.C. Bobak drove cross country by himself with his spouse and children remaining in Oregon. Bobak made several trips between the two cities to renovate his Oregon home which he planned to lease out. Plaintiffs submitted various receipts for moving expenses to Defendant consisting of airline charges, car rental, a gas receipt and a receipt for a U-Haul rental. (Def's Ex

/ / /

D at 6-14.)  Plaintiffs claimed a total of $5,902 in moving expenses on their 2011 return.  (Def's Ex B at 17.)

Plaintiffs paid mortgage interest on their residence in the amount of $5,519.44 and paid $3,422.40 in mortgage insurance premiums as shown on their 2011 Form 1098 Mortgage Interest Statement.  (Def's Ex F at 5.)  Plaintiffs actually claimed a deduction of $18,816 on Schedule A for mortgage interest in 2011.  (Def's Ex B at 23.)  Bobak testified that the difference was the result of his error inputting the mortgage interest into his TurboTax program.

Bobak testified that at the time of his move to Washington D.C., his primary residence, located on Sickle Terrace in Portland Oregon, was worth less than the outstanding mortgage. Bobak testified that he moved his family into a townhouse a few blocks away in May 2011, and intended to renovate his home and rent it out.  Plaintiffs claimed $24,796 in Schedule E rental expenses as follows:[1]

| Item | Amount claimed |
|---|---|
| Auto and Travel | $ 3,520 |
| Cleaning/Maint. | $ 360 |
| Insurance | $ 1,088 |
| Mort. Interest | $ 5,519 |
| Repairs | $ 8,913 |
| Taxes | $ 3,009 |
| Utilities | $ 2,387 |
| Totals | $24,796 |

Bobak testified he intended to keep receipts for the renovation separate but lost track of the expenses.  Bobak made several trips from Washington D.C. in order to handle renovations and to show the property and included those items as rental expenses.  Bobak testified that renovations were complete in mid-summer 2011.  Plaintiffs put an ad to rent the home on

///

---

[1] This table was created from Def's Ex B at 24.

Craigslist sometime in 2011. (Def's Ex F at 6.) Plaintiff did not actually rent out the house in 2011.

Plaintiffs claimed $6,266 in charitable deductions for the 2011 tax year. (Def's Ex B at 23.) Bobak testified that during his families' move, Plaintiffs donated a large number of items which he calculated using the TurboTax "It's deductible" program. Plaintiffs submitted twelve receipts for items donated to Goodwill Industries mostly consisting of clothing and minor household items. (Def's Ex E at 7-18.) Plaintiffs also submitted excerpts of valuation from the "It's Deducible" program, with all of the values in the "high" range totaling $283. (Def's Ex E at 19, 20.)

Mitchell testified he is a senior auditor employed by Defendant. He testified that he did not perform the original audit, and disagreed with some of the analysis contained in Defendant's audit report. Mitchell testified that Defendant disallowed all but $534 in moving expenses because of a lack of substantiation. The moving deduction allowed was computed by using the IRS standard mileage rate of $0.19 per mile multiplied by 2,813; the driving distance from Portland, Oregon to Washington D.C. per Google Maps. (Def's Ex D at 3.) Mitchell noted that because Bobak's family did not move to Washington D.C., Defendant could not relate any additional expenses to his move and thus no additional expenses were allowed.

Mitchell testified that Defendant reduced Plaintiffs' Schedule A mortgage interest deduction from $18,816 down to $5,519.44 to conform to their 2011 Form 1098 Interest Statement. Mitchell testified that the auditor who prepared Defendant's original audit report gave Plaintiffs credit of $3,423 for mortgage insurance premiums, however, that credit should have been disallowed because Plaintiffs' adjusted gross income of $119,945 exceeded the income eligibility for the deduction. (Def's Ex B at 1.)

Mitchell testified that Defendant reduced Plaintiffs' non-cash charitable contributions from $6,266 to $500 because of a lack of substantiation of the value of the items donated. He also testified that, based on his review of the items listed on Goodwill receipts, that deduction should be further reduced to either zero, due to a lack of substantiation, or $283 based on the "It's Deductible" values. (*See* Def's Ex E at 20.)

Mitchell testified that Defendant disallowed $24,796 in Schedule E deductions because Plaintiffs did not demonstrate that their residence was changed to a rental property.[2] Mitchell testified that he agrees Plaintiffs moved out of their principal residence in May 2011 but that they have not provided evidence that their residence was actually placed into service as a rental property. Mitchell testified that he saw a printout of one Craigslist ad and based on his review of comparable properties the rent offered was substantially above market price. (Def's Ex F at 6-9.)

## II. ANALYSIS

The issues before the court are whether Plaintiffs are entitled to deductions for moving expenses; Schedule A deductions for mortgage interest, mortgage insurance, and charitable contributions; and Schedule E deductions for rental property expenses, and in what amounts.

In analyzing Oregon income tax cases the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's "personal income tax law identical in effect" to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, where possible. ORS 316.007.[3] Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427. Third, allowable

---

[2] Only $8,044 in deductions were claimed in 2011 and the remainder became a carryover deduction. Mitchell testified that the issue of the carryover deductions has been resolved between the parties.

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Commissioner*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

A.    *Moving Expenses*

Plaintiffs claimed $5,902 in moving expenses related to Bobak's move from Oregon to Washington D.C. for a new job.  IRC section 217 states in pertinent part:

> "(a) Deduction allowed. There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work.
> (b) Definition of moving expenses.
> (1) In general. For purposes of this section, the term "moving expenses" means only the reasonable expenses
> (A) of moving household goods and personal effects from the former residence to the new residence, and
> (B) of traveling (including lodging) from the former residence to the new place of residence.
> Such term shall not include any expenses for meals.
> (2) Individuals other than taxpayer.  In the case of any individual other than the taxpayer, expenses referred to in paragraph (1) shall be taken into account only if such individual has both the former residence and the new residence as his principal place of abode and is a member of the taxpayer's household.

Plaintiffs are potentially entitled to a deduction for moving expenses related to Bobak's move from Oregon to Washington D.C. in March 2011 because Bobak was establishing a new "principal place of work."  Plaintiff provided Defendant with a number of receipts representing "travel" expenses.  The receipts do not contain information relating them to Bobak's actual move.  For example, some of the travel receipts are in the name of Bobak's spouse, yet she did not move to Washington D.C.  In other instances, Bobak supplied receipts for a rental car and fuel purchase from March of 2012, that have no relevance to the 2011 tax year at issue.  Plaintiff provided numerous receipts for airfare and rental cars, but none of those receipts are from March

/ / /

2011. The receipts fail to establish any amounts which substantiate the moving expenses alleged by Plaintiffs.

Defendant's approach in the audit, to give Plaintiffs a deduction for moving mileage based on the federal standard mileage rate, appears reasonable. Multiplying 2,813 miles, representing a one-way driving trip from Portland Oregon to Washington D.C., by the federal standard mileage rate of $0.19/mile[4], results in a total expense of $534. That amount is allowed as a deduction for moving expenses.

B.    *Schedule A Deductions*

1.    *Mortgage interest*

Plaintiffs claimed a deduction for $18,816 in mortgage interest. Bobak acknowledges that Plaintiffs actually paid $5,519 in mortgage interest in 2011, and explains that he made an error inputting numbers into TurboTax. Thus, the court finds that the reduction in the mortgage interest deduction by the Defendant was correct at $5,519.

2.    *Mortgage insurance*

Plaintiffs did not claim a deduction for mortgage insurance premiums, but Defendant's auditor adjusted Plaintiffs' return to credit $3,423 to account for the amounts paid. During trial Defendant asserted that the credit was erroneous because based on Plaintiffs' adjusted gross income, they do not qualify for the deduction. Prior to 2014, taxpayers could deduct mortgage insurance premiums if they met certain criteria, subject to a phase out for taxpayers with adjusted gross income between $100,000 and $109,000. IRC §163(h)(3)(E)(ii). Plaintiffs' adjusted gross income was in excess of the phase out limitation and thus Plaintiffs are not eligible for a deduction related to the mortgage insurance premiums paid.

---

[4] *See* IR 2011-69 (I.R.S.), 2011 WL 2505257.

3. *Non-cash contributions*

Plaintiffs claimed a deduction for $6,266 in non-cash charitable contributions. Defendant allowed $500 after its audit. Charitable contributions are deductible under IRC section 170(a) subject to specific limitations and requirements detailed in that section and further explained in Treasury Regulation section 1.170A-1 (2008). When a taxpayer makes a charitable contribution of personal property, such as clothing and household items, the deduction is generally equal to the fair market value of the item at the time of the contribution. Treas Reg §1.170A-1(c)(1). For contributions of personal property, less than $250, taxpayers are required to maintain a receipt from the donee showing the name of the donee, the date and location of the contribution, and a description of the property. Treas Reg §1.170A-13(b)(1).

Plaintiffs provided a number of receipts which contain the donee name, date and location of the contribution, and a description of the property. Thus, they may deduct the fair market value of those items. Bobak testified that he had difficulty retrieving the values that he input into the program "It's Deductible." Bobak provided Defendant with a printout from the program identifying 74 items, evaluated by their "high" value, totaling $283. Plaintiff offered no additional evidence as to the fair market value of the other items contributed. Although the original auditor gave Plaintiffs a deduction for $500, the evidence submitted in this case does not support that amount. The best evidence presented at trial shows that Plaintiffs are entitled to a Schedule A deduction for charitable contributions in the amount of $283.

C. *Schedule E Deductions*

Plaintiffs claimed a Schedule E loss of $24,796, related to changing their property into a rental unit, during the 2011 tax year. Due to Adjusted Gross Income (AGI) limitations, Plaintiffs' deductions for 2011 are limited to $8,044. Plaintiffs asserted that in connection with

Bobak's move to Washington D.C. they moved the rest of the family to a condominium and planned to renovate and rent out their residence. Plaintiffs claimed a number of expenses related to their rental property including auto and travel, cleaning and maintenance, insurance, mortgage interest, repairs, taxes and utilities. Before we examine the components of their expenses, the court must first determine whether Plaintiffs have established that their property is a rental for which deductions may be taken.

IRC section 280A generally disallows the deduction of expenses of a "dwelling unit" that is used "as a residence" during the tax year. IRS § 280A(a). A "dwelling unit" includes houses such as Plaintiffs' residence. IRC § 280A(f)(1)(A). If the dwelling unit is used as a residence by the taxpayer for more than 14 days or 10 percent of the days the unit is rented, it is considered to be used as a residence. IRC § 280A(d)(1). The evidence shows that Plaintiffs used the subject property as a residence, until May 2011, which is more than 14 days. Further, Plaintiffs had no rental income from the property. Thus, they are prevented from deducting the expenses pursuant to IRC section 280A.

### III. CONCLUSION

After careful review and consideration of the evidence presented, the court finds that Plaintiffs have not substantiated their actual moving expenses and are only entitled to a travel deduction based on the number of miles traveled from Portland, Oregon to Washington D.C., in the amount of $534. The court also finds that Plaintiffs' mortgage interest deduction should be reduced to $5,519 to conform to the amounts actually paid. Plaintiffs are not entitled to a deduction for mortgage insurance premiums because their income exceeds the AGI limitations. Plaintiffs' deduction for charitable contributions should be reduced to $283 to conform to the evidence presented. The court further finds that Plaintiffs are not entitled to any deductions for

Schedule E rental expenses because Plaintiffs used the property as a residence and failed to prove that it was actually used as a rental. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2011 tax year, Plaintiffs' moving expense deduction are reduced from $5,902 to $534.

IT IS FURTHER DECIDED that, for the 2011 tax year, Plaintiffs' Schedule A deductions for mortgage interest are reduced from $18,816 to $5,519; Plaintiffs' deductions for mortgage insurance premiums, are disallowed; and Plaintiffs' non-cash charitable contribution deduction are reduced from $6,266 to $283.

IT IS FURTHER DECIDED that, for the 2011 tax year, Plaintiffs are not allowed any deductions for Schedule E rental expenses.

Dated this ____ day of May 2016.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on May 17, 2016.*